ages for the gross negligence of one of their employes, unless notice of the character of the employe is brought to the knowledge of the company. But the complete answer to this is that a railroad company acts only through its agents—the directors, the superintendent, and all the employes are the agents through whom alone the company acts, and unless the company are held liable for the acts of these parties, the public have neither a remedy nor security. The public have a direct interest in having these companies employ capable, honest, and reliable men, and it is the duty of the companies to see that their employes are of a proper character, or courts and juries will hold them to a strict accountability for misconduct. A railroad company employs a drunken engineer; the life and personal security of the travelling public is placed in his hands; the public can know nothing of his character, and if an accident occurs, occasioned by his negligence, inattention, or misconduct, and loss of life or limb results, the company should be held responsible for the accident thus occurring; not only in compensatory damages, but punitive damages for the want of the exercise of care in the character of the employes selected. And experience has long since demonstrated that merely compensatory damages is not sufficient to compel these companies to that care and attention that the personal safety and security of the travelling public demand.

Under the peculiar circumstances of this case the court is unable to separate the proof of the actual damages from the inference of punitive damages. The conduct of the agent of the company is so intimately connected with the proof of the circumstances connected with, and the character of the injury received, that one cannot be excluded without the other. So that the evidence, although in its nature tending to show a reason for punitive damages, would be still admissible as showing the actual damages. But under the rulings of this case heretofore stated by the court, it would, for other reasons, be admissible.

Judgment on the verdict.

BEALE, (UNITED STATES v.) See Case No. 14,549.

## Case No. 1,160.

### BEALE v. VOSS.

[1 Cranch, C. C. 179.][1]

Circuit Court, District of Columbia. July Term, 1804.

PRACTICE—VERDICT BELOW TWENTY DOLLARS—NON PROS.

If the verdict be reduced below twenty dollars by account in bar, there must be judgment of non pros.

[Cited in Hellrigle v. Dulany, Case No. 6,-343.]

At law. Assumpsit for work and labor; an account in bar given in evidence; verdict for 45 cents; motion for non pros. See Laws Md. 1785, c. 46, § 7; Laws Md. Nov. 1785, c. 87, § 2; Laws Md. Nov. 17, 1791, c. 68, § 9.

Mr. Mason, for the defendant, and Mr. Key, for the plaintiff, admitted, that by the law in Maryland there should be a non pros.

Non pros. entered at December term, 1804.

KILTY, Chief Judge, absent.

## Case No. 1,161.

### BEALL v. BECK.

[3 Cranch, C. C. 666.][1]

Circuit Court, District of Columbia. Dec. Term, 1829.

LANDLORD AND TENANT — DISTRESS — BOARDING-HOUSE—PROPERTY OF LODGER—SLAVES.

1. The slave of a stranger, hired to, and in the service and employ of a lodger in a boarding-house, with the consent of his owner, and found upon the premises, is not liable to be distrained for rent due by the boarding-house keeper, being exempted by the broad principle of public convenience.

2. The distinction between an inn and a boarding-house is, that into the former all travellers have a right to enter and demand accommodation; but the keeper of a boarding-house has a right to select his guests.

3. A slave, hired as a servant to a lodger in a boarding-house, is not exempted from distress for rent, on the ground of his being in the actual use and personal service of his master, unless he is so at the time of the seizing of him by way of distress. It must be such an actual use, that the taking of the slave would be, or tend directly to a breach of the peace, even if taken from the tenant himself. The case is strengthened by the fact that the landlord rented the house to be occupied as a boarding-house.

At law. Replevin [by Walter B. Beall] for the plaintiff's slave William, hired to Mr. Easton, who was a boarder at Mrs. Rich's boarding-house, for whose rent, due to Mr. Archer, the slave was, by his order, distrained. The defendant made cognizance as bailiff of William Archer, for $90 rent arrear due by Mrs. Rich.

The plaintiff pleaded: 1st. That the slave was not, at the time when, &c., in the said dwelling-house of Mrs. Rich, as the servant, and in the employment of the said Ann E. Rich, but accidentally, and while in the service of one William C. Easton, to whom the said slave was hired by the said plaintiff; upon which issue was joined. 2d. The same plea with this addition, that there were, at the time when, &c., goods and chattels of the said Ann E. Rich in the said dwelling-house, &c., in which, &c., more than sufficient to satisfy the said rent-arrear, and then and there liable to distress for the said rent. To this plea there was a replication, demurrer, and joinder. 3d. That the said Ann E. Rich, during her occupation and enjoyment

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]